IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

LOUISIANA ENVIRONMENTAL ACTION
NETWORK and SIERRA CLUB

        Plaintiffs

        V.                                  NO. 3:15-cv-00858 JJB-RLB

GINA MCCARTHY, in her official
Capacity as Administrator of the U.S.
Environmental Protection Agency

        Defendant

**MOTION TO INTERVENE BY YUHUANG CHEMICAL, INC.**

Applicant-in-Intervention, Yuhuang Chemical, Inc. ("YCI"), through undersigned counsel and pursuant to *Federal Rule of Civil Procedure* 24(a)(2), moves the Court to enter an order granting YCI intervention as of right as a party in this action. In the alternative, YCI respectfully requests that the Court grant YCI permissive intervention pursuant to *Federal Rule of Civil Procedure* 24(b)(1). In the further alternative, YCI requests that the Court grant it *amicus curiae* status to oppose the relief sought by the Plaintiffs, Louisiana Environmental Action Network ("LEAN") and Sierra Club (collectively "Plaintiffs").

## I.    INTRODUCTION

Through this proceeding, Plaintiffs seek to compel Gina McCarthy, in her official capacity as Administrator of the United States Environmental Protection Agency ("EPA") to grant or deny Plaintiffs' petition (the "Petition") to object to a Title V Operating Permit (the "Permit") issued to YCI by the Louisiana Department of Environmental Quality ("LDEQ"). YCI obtained the Permit as part of its plan to build a world-scale methanol production complex[1] along

---

[1] Methanol is a hydrocarbon derivative widely used as an intermediate feedstock to make other chemical products, including many plastics.

the Mississippi River in St. James Parish, Louisiana. YCI's state-of-the-art methanol production complex would be one of the most technologically advanced and cleanest methanol production facilities ever built, and would provide a significant boost to the local, state, and national economy.

The first phase of the project involves the construction and operation of one methanol plant (the "Methanol Plant") for an investment in excess of $1 billion. The Methanol Plant will have a design production capacity of approximately 5,000 metric tons per day of refined Grade AA methanol from natural gas using Air Liquide Lurgi MegaMethanol technology.[2] This Air Liquide technology is a highly efficient process that results in reduced consumption of natural gas feedstock as compared to conventional methanol production technologies, while allowing for greater production capacity from a single production train.[3] This results in lower carbon consumption and lower emissions of GHG (greenhouse gas), $NO_x$ (nitrogen oxide), CO (carbon monoxide), $SO_2$ (sulfur dioxide), PM (particulate matter) and other pollutants.[4] Thus, LDEQ determined that the Methanol Plant offers more protection to the environment than any other possible alternative project without unduly curtailing non-environmental benefits.[5] Based on the potential-to-emit of regulated air pollutants, LDEQ correctly determined that the Methanol Plant will be a minor source under the Prevention of Significant Deterioration ("PSD") program. YCI has already invested significant funds in key contract commitments to implement this state-of-the-art Methanol Plant, including key design, engineering, construction, and natural gas supply contracts.

---

[2] *See* LDEQ Basis for Decision, attached hereto as Exhibit A, p. 2.
[3] *Id.*, p. 7.
[4] *Id.*
[5] *Id.*

To successfully execute its plans for the Methanol Plant and the methanol production complex as a whole, YCI has acquired significant real property in St. James Parish. YCI purchased approximately 1300 acres of land, including property with frontage on the Mississippi River, St. James High School grounds, and residential properties. YCI specifically acquired this extensive property in St. James Parish for the development of the Methanol Plant and eventual methanol production complex because of the availability and cost of natural gas, access to the river and rail transportation and other existing infrastructure, sufficient acreage, availability of workforce, avoidance of environmental impacts, economic conditions, and the business climate.[6] Groundbreaking for the Methanol Plant occurred September 18, 2015 with a target completion date of 2018.

The Louisiana Department of Economic Development ("LED"), former Louisiana Governor Bobby Jindal, St. James Parish President Timmy Roussel, and officials of other nearby parishes all welcomed YCI's decision to locate in the area, recognizing the significant social and economic benefits of the project. For example, the Methanol Plant will create approximately 200 permanent jobs with an average salary of $85,000 per year plus benefits, equating to an annual payroll of $17 million with associated indirect income tax benefits.[7] In addition, the Methanol Plant will result in approximately 1,040 new indirect jobs, for a total of more than 1,200 new jobs in Southeast Louisiana and surrounding areas.[8] Even more, the Methanol Plant will create approximately 2,000 temporary construction jobs at peak building activity, with construction extending over approximately two years.[9]

---

[6] *See, e.g.*, *id.*, p. 5. In fact, YCI evaluated several other potential undeveloped properties suitable for the development of the state-of-the-art methanol production complex; none of those properties met YCI's needs. *See id.*, p. 6.
[7] *Id.*, p. 11.
[8] *Id.*
[9] *Id.*, p. 11.

The economic impact of construction for the project will be significant. Capital expenditures to construct the Methanol Plant are expected to total approximately $900 million.[10] Construction workers are anticipated to reside locally or within the surrounding region and to rely upon local businesses for services; therefore, local businesses will directly benefit from Methanol Plant. Associated employment impacts go beyond the construction industry to various service industries, commercial and retail trades. Convenience stores, insurance brokers, wholesale dealers, and other such persons and industries gain potential economic benefits resulting from the construction of the Methanol Plant.  With the current state of economic crisis in the State of Louisiana as recently described by Governor John Bel Edwards, the economic benefits accruing to the State and local economies from the Methanol Plant project are even more important and will provide critical jobs and economic support during these difficult times.[11]

LDEQ properly issued YCI the Permit, which requires that YCI ensure that emissions meet or exceed all applicable requirements, and also ensures that emissions will not adversely affect human health or the environment. The local, state, and national economy will benefit from the Methanol Plant, which will provide personal income for the facility's permanent and contract employees, increase the tax revenues for St. James Parish, the State of Louisiana, and the Federal government, and necessitate the purchase of goods and services from other businesses. These benefits are major, significant, and tangible.[12] YCI has taken great care to propose a significant project with significant benefits to the State and local economies without compromising the protection of the environment.

---

[10] *Id.*
[11] *See* Gov. Edwards' Special Address to the State available at http://gov.louisiana.gov/news/gov-edwards-special-address-to-the-state.
[12] *Id.*

The Supreme Court has long-established that "a lawsuit in federal court is not a forum for the airing of interested onlookers' concerns, nor an arena for public-policy debates."[13] Plaintiffs are using this lawsuit to do just that - further their public-policy debate against industrialization along the Mississippi River in Southeast Louisiana. YCI seeks to intervene in this suit because the Permit is integral to its more than $1 billion Methanol Plant, which is the specifically evaluated and intended use of its significant real property in St. James Parish, and the driving force behind YCI's sizable investment in the property. The timeframe for EPA's response to the Petition greatly impacts the Methanol Plant project. To be sure, any deadline for EPA to respond to the Petition as ordered by this Court or as agreed in settlement may, as a practical matter, impair YCI's ability to successfully complete the project while the merits of its Permit remain in limbo, or it could not allow enough time for YCI to proactively address Plaintiffs' concerns should YCI determine it appropriate to do so. Either scenario could as a practical matter result in impairment of YCI's property interest in the Permit, significant impairment of YCI's right to develop its property as intended, diminution in the value of YCI's real property in sharp contrast to its sizable investment in the property, impairment of YCI's interest in the continued viability of already executed key contracts, including design, engineering, construction, and natural gas supply contracts, and in YCI suffering incredible economic loss as a result of the foregoing. The same is true if Plaintiffs ultimately succeed, through closed-door negotiations in this case or otherwise, in having the Permit rescinded or materially altered.

Yet, at present, YCI is not a party to Plaintiffs' action and thus remains completely in the dark as to the negotiations between Plaintiffs and EPA concerning the latter's review of Plaintiffs' Petition, which negotiations would include not only the timeframe for EPA's response

---

[13] *See, e.g.*, *Mausolf v. Babbitt*, 85 F.3d 1295, 1301 (8th Cir. 1996) (citing *Valley Forge*, 454 U.S. 464, 473 (1982) (Article III "forecloses the conversion of courts of the United States into judicial versions of college debating forums.")).

to the Petition, but also inevitably the merits of Plaintiffs' attack on the Permit. Moreover, YCI believes that Plaintiffs lack standing to bring this action against EPA, but YCI currently has no avenue to raise this jurisdictional flaw or any other defenses. Given its substantial and compelling interest in the outcome of this lawsuit, YCI should have an opportunity to participate in this case.

YCI therefore respectfully asks the Court to allow intervention under either Rule 24(a)(2) or (b)(1) of the *Federal Rules of Civil Procedure*. In the alternative, YCI requests to be granted *amicus curiae* status.

## II.    BACKGROUND

In October 2014, YCI filed an application with LDEQ requesting a permit for the construction and operation of the state-of-the-art Methanol Plant. In conjunction with that application, YCI submitted proposed emission rates, modeling estimates, and other detailed information about the project. Over the next seven months, LDEQ completed its examination of the application – including responding to a number of public comments submitted by Plaintiffs – and ultimately issued Permit No. 2560-00295-V0 to YCI on or about May 5, 2015. EPA also submitted comments on the draft permit during the public comment period, and LDEQ addressed those comments in the final Permit. LDEQ specifically concluded that the Permit's emission limitations and specific requirements require that YCI control emissions to meet or exceed the requirements of all applicable federal and state regulations and do not allow for impacts that could adversely affect human health or the environment in St. James Parish or in the surrounding parishes.[14] In the final Permit, LDEQ made some modifications to the draft permit conditions to reflect consideration of public comments with which LDEQ agreed but did not withdraw the draft permit nor require YCI to go through PSD review. In all respects, LDEQ disagreed with

---

[14] *See,* Exhibit A, p. 14.

Plaintiffs' myriad allegations of insufficiency in their public comments (which Plaintiffs included, sometimes copied verbatim, in Plaintiffs' Petition) and LDEQ refused to classify the Methanol Plant project as a new major source requiring it to undergo PSD review and obtain a PSD permit. Notably, Plaintiffs did not appeal LDEQ's issuance of the Permit, despite their ability to do so under Louisiana law.[15]

On May 19, 2015, Plaintiffs filed with EPA the Petition requesting EPA to file an objection to the already-issued Permit. Plaintiffs filed this action December 23, 2015 – less than three months ago – when EPA failed to respond to that Petition within 60 days. EPA has yet to file a responsive pleading. Without issue being joined, it is clear that the parties have not conducted any discovery. The only matter currently pending is a Status Conference with the Court set April 21, 2016 with a joint status report due April 7, 2016. YCI did not learn of this lawsuit until February 1, 2016 – less than two months ago.

### III. LAW AND ARGUMENT

#### a. YCI is entitled to intervene as a matter of right.

The right of a third party to intervene in an action is controlled by Rule 24(a), *Federal Rules of Civil Procedure*:

> Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.[16]

---

[15] *See, e.g.*, La. R.S. 30:2050.21.
[16] Fed. R. Civ. P. 24(a).

The Court, when reviewing requests for intervention, should liberally construe the requirements of Rule 24, resolving all doubts in favor of the proposed intervenor, here YCI.[17] The inquiry "is a flexible one, which focuses on the particular facts and circumstances surrounding each application.... and intervention of right must be measured by a practical rather than technical yardstick."[18] Applying this liberal standard and the requirements of Rule 24(a)(2), YCI is entitled to intervene as a matter of right.

### i. Timeliness

Rule 24(a) requires that a motion to intervene be "timely." The timeliness of a motion to intervene is determined by the totality of the circumstances.[19] When determining the timeliness of a motion filed pursuant to Rule 24, the Fifth Circuit focuses on (1) the length of time the intervenor knew or should have known of his interest in the case; (2) prejudice to the existing parties resulting from the intervenor's failure to apply for intervention sooner; (3) prejudice to the intervenor if his application for intervention is denied; and (4) the existence of unusual circumstances.[20] The first factor focuses on the time lapse between the applicant's receipt of actual or constructive knowledge of its interest in the litigation and the filing of its motion to intervene; the clock runs either from the time the applicant knew or reasonably should have known of its interest.[21] With regard to the second timeliness factor, "[a]ny potential prejudice caused by the intervention itself is irrelevant, because it would have occurred regardless of whether the intervention was timely."[22]

---

[17] *See, e.g.*, *In re Lease Oil Antitrust Litigation*, 570 F.3d 244, 248 (5th Cir. 2009).
[18] *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996) (internal quotations omitted).
[19] *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263-64 (5th Cir. 1977).
[20] *Id*. at 264-66.
[21] *Edwards*, 78 F.3d at 999 (citing *Stallworth*, 558 F.2d at 264).
[22] *In re Lease Oil Antitrust Litig.*, 570 F.3d at 248 (citing *Stallworth*, 558 F.2d at 265).

Because less than two months have passed since YCI's receipt of actual knowledge of its interest in this lawsuit, and less than three months have passed since the inception of this lawsuit and thus the earliest point in time anyone could argue YCI had constructive knowledge of its interest in this litigation, the first timeliness factor weighs in favor of intervention. Moreover, because this litigation has not yet progressed whatsoever, and in fact issue has yet to be joined, there is no prejudice to the existing parties resulting from YCI's motion to intervene at this stage of the proceeding and the second factor weighs in favor of intervention.

The third timeliness factor likewise weighs in favor of intervention because YCI could suffer severe prejudice if this Motion is denied. As set forth more fully in Sections III(a)(ii) and III(a)(iii), *infra*, YCI has significant interests in the timeframe for EPA's response to the Petition, in the Permit, in the intended development of its real property in St. James Parish, in preserving the value of its real property in St. James Parish, in the continued viability of its existing key contracts, and in the avoidance of incredible economic loss. If YCI is not allowed to intervene, YCI will be unable to protect these interests by asserting the jurisdictional flaw, through participation in settlement negotiations between Plaintiffs and EPA or briefing to the Court regarding the deadline for EPA's response to the Petition, and through participation in the inevitable discussions between the existing parties regarding the specifics of Plaintiffs' objections to the Permit.

In sum, all relevant timeliness factors weigh in favor of YCI's intervention.[23] Where, as here, intervention is sought shortly after filing of the complaint and before any substantive orders have issued, the motion "cannot be regarded as untimely."[24] To be sure, "an application made

---

[23] There are no unusual circumstances present; therefore, the fourth timeliness factor is neutral.

[24] *Mova Pharmaceutical Corp. v. Shalala,* 140 F.3d 1060, 1076 (D.C. Cir. 1998).

before the existing parties have joined issue in the pleadings has been regarded as clearly timely."[25]

### ii. Interest

An intervenor must have a "direct, substantial, legally protectable interest in the proceedings."[26] Although the interest must be legally protectable, "it need not be legally *enforceable*. In other words, an interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim."[27] The inquiry "turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way."[28] So, for example, while a general economic interest alone may not warrant intervention,[29] a property interest is "the most elementary type of right that Rule 24(a) is designed to protect … because it is concrete, specific to the person possessing the right, and legally protectable."[30] Other interests "are sufficient to support intervention when, like property interests, they are concrete, personalized, and legally protectable."[31] Thus, for example, "[a]n interest in preserving the value of property or in the continued viability of an agreement are legally protectable."[32]

YCI has significant property interests, paired with direct and substantial economic interests, at stake in this matter. YCI has a momentous interest in the Permit, in the development of its real property in St. James Parish as intended and permitted, as well a substantial interest in preserving the value of YCI's real property considering its sizable investment in the property due

---

[25] 7 C. Wright & Miller, *Federal Practice and Procedure* § 1916 (2007).
[26] *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (citing *New Orleans Public Service, Inc. v. United Gas Pipe Line Co. ("NOPSI")*, 732 F.2d 452, 463 (5th Cir.1984) (en banc)).
[27] *Texas*, 805 F.3d at 659.
[28] *Id*. at 657.
[29] *New Orleans Public Service, Inc.*, 732 F.2d at 463 (en banc).
[30] *Texas*, 805 F.3d at 658 (citing *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir.1970).).
[31] *Id*.
[32] *See, e.g.*, *United States v. Union Elec. Co*., 64 F.3d 1152, 1161 (8th Cir. 1995).

to its specific attributes for YCI's intended development. Regardless of whether YCI may enforce these interests through a separate legal proceeding, they are legally protectable interests sufficient to satisfy Rule 24(a). YCI also has a concrete, personal, and legally protectable interest in the continued viability of its key contracts, including design, engineering, construction, and natural gas supply contracts for the Methanol Plant – contracts in which YCI has invested significant resources and the value and validity of which depend on the validity of the Permit and development of the Methanol Plant. YCI also has a personal, direct and substantial interest in the avoidance of incredible economic loss which would result from the impairment of the foregoing property interests, including but not limited to loss of investment, lost revenues, and/or costly equipment changes. Finally, tied to these significant, legally protectable interests is YCI's interest in the timeframe or deadline for EPA's response to the Petition, a timeframe which could impact the current progression of the project due to the cloud on the Permit and uncertainties surrounding the investment,[33] or which could impair YCI's ability to address Plaintiffs' concerns with the Permit should YCI determine it appropriate to do so.

To the extent others may argue that YCI's interest is purely economic and not legally protectable under *NOPSI*, they are wrong.[34] In that case, a utility company filed suit against a seller of natural gas in a contractual dispute concerning fuel prices.[35]  The City of New Orleans attempted to intervene on the ground that the electricity rates paid by the City would increase if the fuel-pricing dispute was decided against the utility company.[36] Sitting *en banc,* the Fifth Circuit held that the City's generalized, "purely economic interest" was insufficient to justify

---

[33] Despite the Petition, YCI's Permit remains effective and YCI is currently continuing to pursue construction of the Methanol Plant. 42 USC § 7661d(b)(2) provides in part that "[i]f the permit has been issued by the permitting agency, such petition shall not postpone the effectiveness of the permit."
[34] *See* Fn. 27, *supra.*
[35] *NOPSI,* 732 F.2d at 454-55.
[36] *Id.* at 460-61.

intervention.[37] "After all, every electricity consumer ... and every person who does business with any electricity consumer yearns for lower electric rates."[38] It would have been absurd to allow all electricity consumers and every person who does business with an electricity consumer to intervene in the action. Unlike the City in *NOPSI*, YCI does have legally protectable property interests (in the Permit, real property in St. James Parish, and existing contracts), concrete, direct and personal economic interests associated with the development and operation of the Methanol Plant, and an associated direct and personal interest in the timeframe for EPA's response to the Petition due to the effect this deadline could have on YCI's property and economic interests. Unlike the City in *NOPSI*, only YCI holds these substantive interests and only YCI may seek intervention to protect these interests.

Despite the importance of the foregoing and despite the inevitable claim that this case is only about EPA's timeframe for responding to the Petition, the undisputed fact is that without the involvement of YCI EPA and Plaintiffs will be free to negotiate concerning YCI's Permit under the often used "sue-and-settle" ruse without the involvement of anyone to maintain the integrity of the process and to ensure that the process is not manipulated or misused. As has been often cited recently in various media,[39] this sue-and-settle tactic employed by environmental groups has the potential to subvert the system and undermine the legitimate interests to be protected among the interested parties. YCI's participation in this suit ensures that the process will not be

---

[37] *Id*. at 466.
[38] *Texas v. United States*, 805 F.3d 653, 657-58 (5th Cir. 2015) (citing *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205 (1st Cir.1998).).
[39] *See, e.g.*, Henry N. Butler & Nathaniel J. Harris, *Sue, Settle, and Shut Out the States: Destroying the Environmental Benefits of Cooperative Federalism*, 37 Harv. J.L. & Pub. Pol'y 579, 628 (2014); David B. Rivkin, Jr. & Adam Doverspike, *Do Sue and Settle Practices Undermine Congressional Intent for Cooperative Federalism on Environmental Matters?*, 15 Engage: J. Federalist Soc'y Prac. Groups 22, 24 (2014) ("Activists and federal agencies are implementing federal programs over the objections of states by relying on sue and settle tactics that make state participation in the substantive rulemaking difficult or impossible."); Larry Bell, *EPA's Secret And Costly 'Sue And Settle' Collusion With Environmental Organizations* (Feb. 17, 2013).

misused through any agreements negotiated solely by EPA and Plaintiffs, who for all intents and purposes sit on the same side of the table and do not have a true justiciable controversy.

In sum, the construction and operation of the Methanol Plant, and potentially the world-class methanol production complex as a whole, hinges on not only the timeframe for EPA's response to the Petition, but also on EPA's decision regarding the Petition. A timeframe detrimental to YCI's interests or Plaintiffs' success in convincing EPA to grant the Petition could leave YCI unable to develop its real property as intended for the Methanol Plant, which will significantly decrease the value of the property in stark contrast to YCI's investment in the property and eviscerate or threaten the viability of existing key contracts, or YCI will have to make significant and costly changes to the current design plan rendering the Methanol Plant less competitive or potentially no longer a viable project. Despite the ostensibly limited issue in this proceeding, it is unquestionable that Plaintiffs and EPA will discuss the merits of Plaintiffs' concerns contained in the Petition, with Plaintiffs pushing EPA to grant the Petition and modify, terminate or revoke the Permit. YCI is entitled to participate in this lawsuit in order to defend its interests in the timeframe for EPA's response to the Petition and to defend the issuance of the Permit, and in so doing, YCI is entitled to attack the sufficiency of Plaintiffs' claims and standing to bring this action.

### iii.  Impairment of Interest

As set forth above, YCI has significant interests at stake which could be impaired by disposition of this action through Court order or settlement. The "question of impairment is not separate from the question of the existence of an interest."[40] "Generally, after determining that the applicant has a protectable interest, courts have 'little difficulty concluding' that the disposition of the case may affect such interest."[41] Rule 24 does not require that YCI demonstrate to a certainty that its interest will be impaired; it requires only that the disposition of the action may as a practical matter impair its interests.[42]

If YCI is not allowed to intervene, the Court could order, or the existing parties could agree, that EPA respond to the Petition within a timeframe that as a practical matter could impair YCI's significant property and economic interests. For example, the timeframe could as a practical matter disrupt construction of the Methanol Plant completely due to uncertainty of the investment, particularly given the fact that after waiting for the accrual of EPA's deadline to respond Plaintiffs could then seek judicial review of EPA's denial of the Petition,[43] meaning continued uncertainty surrounding the viability of the Permit and the Methanol Plant. On the other hand, if after accrual of the deadline EPA grants the Petition and modifies, terminates, or revokes the Permit as required by 42 U.S.C. § 7661d(b)(3), YCI could be left with a Methanol Plant substantially constructed within the parameters of an air permit which is no longer valid, which would impair YCI's significant property and economic interests. On the other side of the spectrum, the timeframe could be too short to allow YCI to protect its interests by proactively

---

[40] *Utahans for Better Transportation*, 295 F.3d 1111, 1116 (10th Cir. 2002).
[41] *Jackson v. Abercrombie*, 282 F.R.D. 507, 517 (D. Haw. 2012) (citing *Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006)).
[42] *See, e.g.*, *Kan. Pub. Emps. Ret. Sys.* 60 F.3d at 1307 (quoting *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 738 F.2d 82, 84 (8th Cir. 1984) (per curiam)).
[43] *See,* 42 U.S.C. § 7661d(b)(2); 42 U.S.C. § 7607.

addressing Plaintiffs' concerns should YCI determine it appropriate to do so. Any of these scenarios drastically impacts YCI, giving it a significant interest in the timeframe for EPA's response to the Petition.

In addition, as set forth above, YCI could suffer the loss of an owner's right to develop his property as he wishes, diminution of property value, loss of existing contracts and/or loss of investment or partial investment in same, and could also suffer immense lost revenues each year if it is forced to forego the project due to uncertainties or if it loses the Permit altogether. Even if YCI is not forced to forego the project due to uncertainties and does not lose the Permit altogether but the Permit is modified, YCI's interests could as a practical matter be impaired by this inability to develop its property as intended and diminution of property value due to development constraints, and it could incur costly equipment changes or reductions in operations of the intended Methanol Plant.

Without intervention in this case, YCI's interests which hinge on the timeframe for EPA's response to the Petition, maintaining the Permit and finalizing the Methanol Plant could be severely impaired because Plaintiffs would have the opportunity to engage in one-on-one negotiations with EPA to not only determine a deadline for EPA's response to the Petition, but also to determine the parameters or validity of the Permit. Although the existing parties may claim that this case is solely about a deadline for EPA to respond to the Petition, the fact is that the existing parties will inevitably use this opportunity to negotiate what Plaintiffs think EPA's response to the Petition should be, and why. Sierra Club, LEAN and EPA all share conservationist interests, which means that although they may be labeled as either Plaintiff or Defendant in this action, they essentially sit on the same side of the table. YCI should be entitled to participate in any discussions and negotiations between Plaintiffs and EPA in order to fully

defend its interests in the timeframe for EPA's response to the Petition, as well as to defend the validity of the Permit.

Moreover, if YCI is not permitted to intervene, it would have no avenue to raise Plaintiffs' lack of standing – a defense that may dispose of the instant litigation and solidify the Permit. This Court's subject matter jurisdiction depends on whether Plaintiffs can establish standing.[44] Plaintiffs lack standing because they have each failed to identify a member meeting the "irreducible constitutional minimum of standing" contained in Article III. First, Plaintiffs failed to allege that any individual members would have standing to sue in their own right. Even more, Plaintiffs fail to allege in which "areas" these unidentified individual members allegedly "live, work, and recreate" to such a degree as to allegedly allow them to be exposed to dangerous pollutants. Are these members neighbors to YCI's real property in St. James Parish or do they reside on the opposite side of the State, or in California? Moreover, what recreational activities do the members participate in and how will those activities allegedly be impacted by the Methanol Plant? In the same vein, what occupations do the members hold and how will the Methanol Plant allegedly impact those occupations? Based on the allegations of the Complaint, the Court cannot be satisfied that Plaintiffs' members' alleged concerns "about the pollutants' health, economic, and environmental effects" are not the type of general grievances that are insufficient to support standing.

EPA has not yet filed a responsive pleading in this case and it is unknown whether EPA will raise or fully pursue this jurisdictional flaw. YCI should be allowed to intervene to raise this and all other appropriate defenses to ensure that the Permit is upheld on its current terms. If the standing defense is successful, it will put an end to this lawsuit, and YCI can move forward with

---

[44] *K.P. v. LeBlanc*, 729 F.3d 427, 436 (5th Cir. 2013).

its state-of-the-art methanol production facility without this regulatory uncertainty and looming threat to its ongoing investment and real property.

### iv.   Lack of Adequate Representation

An intervenor "need not show that the representation by existing parties will be, for certain, inadequate. Instead, Rule 24(a) is satisfied if the applicant shows that the representation of his interest 'may be' inadequate."[45] This burden is "minimal."[46]

None of the existing parties may adequately represent YCI's interests because none of their interests are aligned with those of YCI. To be sure, Plaintiffs' interests are totally inapposite; they would apparently like to see the Permit revoked and YCI's methanol production complex project terminated altogether. EPA's interests are institutional and consist of securing an expansive interpretation of EPA authority, efficiently and strictly enforcing environmental laws including the Clean Air Act, and maintaining its duties with regard to concerned citizens. Although YCI has a similar goal of protecting the environment, it has additional proprietary and economic interests associated with the Methanol Plant that EPA does not have. *See* Section III(a)(ii), *supra.*   EPA is "unlikely to" – and arguably should not – "afford [intervenors'] discrete and particularized interest the same primacy as [the intervenors] would themselves."[47] Because of this divergence of interests between EPA and YCI in a manner germane to this case, any presumption that EPA would adequately represent YCI's interests is rebutted. Where, as here, the interests of a proposed intervenor and existing parties "are disparate, even though directed at

---

[45] *Texas v. United States*, 805 F.3d 653, 661 (5th Cir. 2015) (internal citations omitted); *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10 (1972).
[46] *Id.*
[47] *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 15 (D.D.C. 2010).

a common legal goal, … intervention is appropriate."[48] The possibility that the interests of the applicant and the existing parties may diverge need not be great in order to satisfy this element.[49]

Because YCI has satisfied the four criteria for intervention under *Federal Rule of Civil Procedure* 24(a)(2), YCI is entitled to intervene as of right.

### b.  Alternatively, YCI is entitled to permissive intervention.

In the alternative, YCI respectfully requests that the Court exercise its discretion and grant YCI permissive intervention. Permissive intervention is appropriate in circumstances in which (1) the application is timely; (2) the applicant's claim or defense and the main action have a common question of law or fact; and (3) intervention will not unduly delay or prejudice the adjudication of the original parties' rights.[50] Courts may also consider whether the proposed intervenors' interests are adequately represented by other parties.[51] While permissive intervention is within the Court's discretion, Courts should conduct "a flexible reading of Rule 24(b)."[52]

As discussed in Section III(a)(i), *supra*, YCI's motion to intervene – filed less than three months after Plaintiffs' Complaint and before EPA's responsive pleading or any substantive progress has occurred in the case – is indisputably timely. For the same reasons intervention will not unduly prejudice or delay the adjudication of the original parties' rights. Additionally, because YCI has compelling and substantial interests in the timeframe for EPA's response to the

---

[48] *United States v. Union Elec. Co.,* 64 F.3d 1152, 1170 (8th Cir. 1995) (internal citations omitted). *See also*, *Texas*, 805 F.3d at 662.

[49] *See, e.g.*, *Utah Ass'n of Counties v. Clinton,* 255 F.3d 1246, 1254 (10th Cir. 2001); *Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 870 (8th Cir. 1977) (intervention appropriate where the interests of proposed intervenor and current party, "while not adverse, are disparate," even though both sought same legal goal).

[50] *Graham v. Evangeline Parish School Board*, 223 F.R.D. 407, 440 (W.D. La. 2004) (citing *Kneeland v. National Collegiate Athletic Ass'n(Three Cases),* 806 F.2d 1285, 1289 (5th Cir.1987).).

[51] *Graham*, 223 F.R.D. at 440; *Kneeland*, 806 F.2d at 1288.

[52] *EEOC v. National Childrens Center, Inc.,* 146 F.3d 1042, 1046 (D.C. Cir. 1998).

Petition, defending its Permit and challenging Plaintiffs' standing to bring this action, YCI's claims and defenses share common questions of law or fact with the main action. *See* Sections III(a)(ii) and III(a)(iii), *supra*. Finally, YCI's interests are not adequately represented by other parties as set forth in Section III(a)(iv), *supra*. Therefore, all factors weigh in favor of permissive intervention and YCI should be allowed to intervene permissively under Rule 24(b)(2) in the event this Court denies intervention as of right.

### c.  In the further alternative, YCI requests that the Court in its discretion allow YCI to participate as *amicus curiae*.

This Court's authority to appoint YCI as *amicus curiae* "is broad and well-established."[53] Federal district courts possess the inherent authority to allow *amicus curiae* to participate in its proceedings.[54] "Generally, courts have exercised great liberality in permitting an amicus curiae to file a brief in a pending case, and, with further permission of the court, to argue the case and introduce evidence."[55] Among other reasons, YCI's participation in this proceeding will be useful to the Court in ensuring that a true case or controversy exists and that all defenses are asserted and that issues surrounding this Court's subject matter jurisdiction are fully vetted, as well as limiting the potential for economic and property loss associated with the timeframe for EPA's response to the Petition. For these reasons alone the Court may and, respectfully, should allow YCI to participate as *amicus curiae*.[56]

---

[53] *U.S. v. Davis*, 180 F.Supp.2d 797, 799-800 (E.D. La. 2001), *writ granted, cause remanded on other constitutional grounds,* 285 F.3d 378 (5th Cir. 2002); *accord*, *U.S. v. State of La.*, 751 F.Supp. 608, 620 (E.D. La. 1990).
[54] *Davis*, 180 F.Supp.2d. at 800; *State of La*, 751 F.Supp. at 620.
[55] *Id*.
[56] *Id*. (no strict prerequisites must be established).

IV.     CONCLUSION

For the foregoing reasons, YCI prays that this Court grant its Motion to Intervene, making YCI a party to this action. Attached hereto as Exhibit B is YCI's proposed pleading setting out the defense for which intervention is sought.

In the alternative, YCI requests that the Court in its discretion allow YCI to participate in the proceeding as *amicus curiae*.

<div style="margin-left: 40%;">

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC


By:     /s/David R. Taggart

    David R. Taggart, T.A.
    Louisiana Bar Roll No. 12626

    Jerald N. Jones
    Louisiana Bar Roll No. 2005

    Natalie J. Taylor
    Louisiana Bar Roll No. 31282

401 Edward Street, Suite 1000
Shreveport, LA  71101-5529
Phone: (318) 227-1131
Fax:     (318) 227-1141

- - Attorneys for Yuhuang Chemical, Inc.

</div>

## LOCAL CIVIL RULE 7(E) CERTIFICATE

Pursuant to Local Civil Rule 7(e), I hereby certify that on behalf of Yuhuang Chemical, Inc. I attempted to obtain consent for the filing and granting of this Motion from all parties having an interest to oppose. Counsel for Sierra Club and Louisiana Environmental Action Network have each been contacted by undersigned counsel and have advised that they oppose the Motion.  Undersigned counsel has contacted counsel for the Defendant, EPA, but counsel for EPA has not responded and it is therefore assumed that EPA opposes the Motion.

         David R. Taggart    
       OF COUNSEL

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on March 18, 2016.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

         David R. Taggart    
       OF COUNSEL