**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**LOUISIANA ENVIRONMENTAL ACTION NETWORK, ET AL.** | **CIVIL ACTION**

**NO. 15-858-JJB-RLB**

**VERSUS**

**GINA MCCARTHY, IN HER OFFICIAL CAPACITY AS ADMINISTRATOR OF THE U.S. ENVIRONMENTAL PROTECTION AGENCY**

**RULING**

Before the Court is non-party Yuhuang Chemical, Inc.'s ("YCI") Motion to Intervene. (R. Doc. 18). The motion is opposed. (R. Docs. 24, 25).

Also before the Court is Plaintiffs' Motion to Strike YCI's Notice of Supplemental Filing. (R. Doc. 37). YCI has filed a response. (R. Doc. 39).

**I. Background and Procedural History**

Title V of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7661-61f, and the applicable regulations, require state permitting authorities to submit any proposed Title V permits to the U.S. Environmental Protection Agency ("EPA") for review. 42 U.S.C. § 7661d(a)(1); 40 C.F.R. § 70.8(a)(1). On February 4, 2015, the Louisiana Department of Environmental Quality ("LDEQ") submitted to EPA a proposed Title V permit for YCI's operation of a new methanol manufacturing plant in St. James, Louisiana ("the Methanol Plant"). (R. Doc. 18-1 at 4). EPA had 45 days from receipt of the proposed permit to object to the permit if EPA determined it "contains provisions that are . . . not in compliance" with the "applicable requirements" of the CAA. 42 U.S.C. § 7661d(b)(1). EPA did not object to the issuance of the proposed permit within the 45-day period.

On May 5, 2015, in the absence of any objection from EPA, the Louisiana Department of Environmental Quality ("LDEQ") issued Permit No. 2560-00295-V0 ("the Permit") to YCI for the operation of the Methanol Plant. (R. Doc. 18-1).

Within 60 days after the expiration of the 45-day period for EPA to object, "any person may petition" EPA to object to a proposed permit and EPA "shall either grant or deny such petition within 60 days after the petition is filed." 42 U.S.C. § 7661d(b)(2). Plaintiffs Louisiana Environmental Action Network ("LEAN") and Sierra Club, non-profit environmental groups, filed such a petition on May 19, 2015 ("the Petition") requesting EPA to object to the Permit. (R. Doc. 2 at 1).

On December 23, 2015, Plaintiffs initiated this citizen suit pursuant to 42 U.S.C § 7604(a)(2), which provides that "any person may commence a civil action on his own behalf . . . against the Administrator . . . to perform any act or duty under this Act which is not discretionary with the Administrator." Plaintiffs allege that EPA failed to perform a nondiscretionary duty under the CAA, namely that EPA failed to grant or deny the Plaintiff's timely petition for objecting to a major source operating permit within 60 days as required by 42 U.S.C. § 7661d(b)(2). (R. Doc. 29 at 1).

On March 18, 2016, YCI moved to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure, or, in the alternative, to participate as *amicus curiae*. (R. Doc. 18). YCI has submitted a proposed Answer in Intervention and Affirmative Defenses in which it prays that the Court reject all claims raised by Plaintiffs. (R. Doc. 18-2 at 8). Plaintiffs oppose intervention by YCI, whether as a matter of right or through permissive intervention. (R. Doc. 25). EPA opposes intervention by YCI as a matter of right, taking no position on whether permissive intervention should be allowed. (R. Doc. 24).

The current parties to this action—LEAN, Sierra Club, and EPA—filed a Joint Status Report on April 7, 2016. (R. Doc. 23).  The parties indicated that they provided YCI with a draft of the Joint Status Report as a courtesy. (R. Doc. 23 at 1).  YCI moved to participate as a "proposed intervenor" for the purpose of participating in the scheduling conference set for April 21, 2016. (R. Doc. 22).  The Court denied the motion, stating that resolution of the pending motion to intervene would determine YCI's participation in this action, and rescheduled the scheduling conference. (R. Doc. 30).

On April 15, 2016, EPA lodged a proposed consent decree containing the terms of a proposed settlement between the parties. (R. Doc. 31).  EPA indicated that "[p]ursuant to 42 U.S.C. § 7413(g) and Paragraph 18 of the proposed consent decree, after the proposed consent decree is lodged with the Court, EPA will submit a notice of the proposed consent decree for publication in the Federal Register, and will then accept public comment on the proposed consent decree for 30 days."  (R. Doc. 31 at 1).  EPA further indicated that "[a]fter the close of the public comment period, EPA will review the comments and will move the Court for entry of the proposed consent decree if appropriate in light of the comments received." (R. Doc. 31 at 1).

On April 18, 2016, the parties filed a joint motion for stay of proceedings until June 30, 2016, to allow for completion of the comment process. (R. Doc. 32).  The Court granted the motion. (R. Doc. 33).  The stay was continued until July 15, 2016. (R. Doc. 43).

On June 1, 2016, despite its non-party status and the stay of the litigation, YCI filed a "Notice of Supplemental Filing" in the record (R. Doc. 36), attached to which are YCI's comments on the proposed consent decree dated May 27, 2016. (R. Doc. 36-1).

On June 6, 2016, Plaintiffs moved to strike the "Notice of Supplemental Filing" on the basis that YCI is not a party in this action and has had the opportunity to comment on the proposed consent decree through the process allowed by 42 U.S.C. § 7413(g). (R. Doc. 37).

On July 15, 2016, EPA filed a Consent Motion for Entry of Consent Decree. (R. Doc. 44). The proposed consent decree, if entered by the Court, will require EPA to "sign a response granting or denying the Petition" on or before September 1, 2016. (R. Doc. 44-2 at 2). That motion remains pending before the district judge.

A telephone status conference is set for August 23, 2016. (R. Doc. 47).

## II. Law and Analysis

### A. Intervention of Right

Rule 24(a) provides for intervention of right, on timely motion, where the movant:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).[1] Accordingly, the four elements for intervention of right include (1) timeliness, (2) an interest in the subject matter of the litigation. (3) impairment of the applicant's interest if it is not allowed to intervene, and (4) inadequate representation of that interest by the existing parties. *House v. S/V Canada Goose I*, 641 F.2d 317, 320 (5th Cir. 1981). Because the Court concludes that YCI does not have "an interest in the subject matter of the litigation," the Court need not address the remaining issues.

The "interest" requirement of Rule 24(a) requires a direct, substantial, legally protectable interest in the action, meaning 'that the interest be one which the *substantive* law recognizes as

[1] Intervention of right is also appropriate where the intervenor "is given an unconditional right to intervene by federal statute." Fed. R. Civ. P. 24(a)(1). YCI does not allege that it has been granted such a right.

belonging to or being owned by the applicant.'" *Cajun Elec. Power Co-op., Inc. v. Gulf States Utilities, Inc.*, 940 F.2d 117, 119 (5th Cir. 1991) (quoting *New Orleans Public Service, Inc. v. United Gas Pipe Line Co. (NOPSI III),* 732 F.2d 452, 464 (5th Cir. 1984) (en banc)). "Non-property interests are sufficient to support intervention when, like property interests, they are concrete, personalized, and legally protectable." *Texas v. United States,* 805 F.3d 653, 658 (5th Cir. 2015). "[A]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Id*. at 659.

YCI argues that it "has a momentous interest in the Permit, in the development of its real property in St. James Parish as intended and permitted, as well a substantial interest in preserving the value of YCI's real property considering its sizable investment in the property due to its specific attributes for YCI's intended development." (R. Doc. 18 at 10-11). More specifically, YCI argues that it has "a concrete, personal, and legally protectable interest in the continued viability of its key contracts, including design, engineering, construction, and natural gas supply contracts for the Methanol Plant"; "a personal, direct and substantial interest in the avoidance of incredible economic loss which would result from the impairment of the foregoing property interests, including but not limited to loss of investment, lost revenues, and/or costly equipment changes"; and an "interest in the timeframe or deadline for EPA's response to the Petition, a timeframe which could impact the current progression of the project due to the cloud on the Permit and uncertainties surrounding the investment, or which could impair YCI's ability to address Plaintiffs' concerns with the Permit should YCI determine it appropriate to do so." (R. Doc. 18 at 11). YCI notes that pursuant to 42 U.S.C. § 7661d(b)(2) the Permit remains effective,

and that it is currently continuing to pursue construction of the Methanol Plant, despite the filing of the Petition. (R. Doc. 18 at 11 n. 33).

In opposition, EPA and the Plaintiffs argue that YCI does not have an interest in the deadline by which EPA will act on the Petition and, therefore, intervention of right is not warranted. (R. Doc. 24 at 5-9; R. Doc. 25 at 4-8). In support of this position, EPA acknowledge that neither the Fifth Circuit nor this Court has addressed intervention in the context of a citizen suit seeking to compel EPA to respond to a Petition submitted pursuant to 42 U.S.C. § 7661d(b)(2). (R. Doc. 24 at 6).

EPA and the Plaintiffs ask the Court to adopt the reasoning in *Sierra Club v. McCarthy*, 308 F.R.D. 9 (D.D.C. 2015) and decisions issued by the D.C. Circuit. (R. Doc. 24 at 6-7; R. Doc. 25 at 4-7). The facts of *Sierra Club* are similar to those in the instant action. In *Sierra Club*, the Public Service Company of New Hampshire ("PSNH") operated a power plant called Schiller Station for which it sought a Title V operating permit from the New Hampshire Department of Environmental Services. *Id*. at 10-11. As in this case, the state agency submitted a proposed permit to EPA, which raised no objections in the 45-day review period. *Id*. at 11. The Sierra Club subsequently filed a timely petition with EPA and EPA did not grant or deny the petition within 60 days. *Id*. Sierra Club filed the lawsuit seeking to compel EPA to respond to the petition and PSNH moved to intervene. *Id*.

In providing the legal standards for intervention, the district court stated that in addition to demonstrating a "legally protectable interest," an entity seeking to intervene as a matter of right in an action pending within the D.C. Circuit must also "establish Article III standing." *Id*. (citing *Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317, 1323 (D.C. Cir. 2013). In light of that standard, the Court held that "PSNH's alleged injuries—the loss or alteration of its permit

for Schiller Station—are entirely contingent on EPA deciding to grant the Sierra Club's petition, since a decision to deny it would maintain the status quo. As a result, PSNH lacks standing because 'standing requires more than the *possibility* of potentially adverse regulation." *Sierra Club*, 308 F.R.D. at 12 (quoting *Defenders of Wildlife*, 714 F.3d at 1324-25 (emphasis by *Sierra Club*)). The district court further stated that the reasons for its finding that PSNH lacked standing equally establishes that PSNH lacks a legally protected interest meriting intervention of right. *Id*. at 12-13 (citations omitted). The district court also denied permissive intervention because the "litigation pertains to the timeline and not to the substance of the EPA's decision on the Sierra Club's petition" and the Court would not stall ongoing settlement negotiations between the Sierra Club and EPA. *Id*. at 13.

Unlike the D.C. Circuit, the Fifth Circuit does not necessarily require a proposed intervenor seeking intervention as a matter of right to establish Article III standing. Instead, the Fifth Circuit has held that "Article III does not require intervenors to independently possess standing where the intervention is into a subsisting and continuing Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so." *Ruiz v. Estelle,* 161 F.3d 814, 830 (5th Cir. 1998). Later decisions by the Fifth Circuit suggest that proposed intervenors need not establish Article III standing at all so long as the original parties have standing. *See*, *e.g.*, *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006) ("[T]here is no Article III requirement that intervenors have standing in a *pending* case.").

The Court need not address whether YCI has Article III standing in this action because YCI has not established a legally protectable interest in the subject matter of the litigation. The subject matter of this litigation does not pertain to whether EPA will ultimately grant Plaintiff's

Petition or some aspect of it. This action simply involves whether and when the EPA must act. *See Sierra Club*, 308 F.R.D. at 10 ("Timing is everything. And in this case, it is the only thing.").

Accordingly, the Court finds that YCI has no interest in the subject matter of the instant litigation—the timeframe or deadline for EPA to respond to the Petition—for the purpose of Rule 24. YCI's own articulation of its interest in this timeframe or deadline is that it "could" impact its economic interests and/or impair its ability to address Plaintiffs' concerns with the Permit. (R. Doc. 18 at 11). The Fifth Circuit has held that an "economic interest alone is insufficient" to satisfy the standard for intervention of right. *NOPSI III,* 732 F.2d at 466. Furthermore, nothing in the proposed consent decree suggests that Plaintiffs and EPA have reached a settlement on the merits of the Petition. (*See* R. Doc. 44-2). YCI has failed to articulate how the timing of EPA's decision future decision on Plaintiff's Petition (which the applicable statute set to occur over one year ago) will impair its ability to address Plaintiffs' concerns with the Permit.[2]

Based on the foregoing, the Court concludes that YCI has not established that it must be allowed to intervene as a matter of right.

**B. Permissive Intervention**

Rule 24(b) permits intervention, on timely motion by anyone who, in appropriate part, "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). In exercising its discretion, "the court must consider whether the

[2] Furthermore, this Court does not have jurisdiction to review any actions by EPA on the Petition other than the timing of its action. Review of EPA's ultimate action on the merits of the Petition is in the exclusive jurisdiction of the appropriate U.S. Court of Appeals. *See* 42 U.S.C. § 7661d(b)(2); 42 U.S.C. § 7607(b).

intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(c).

Here, the original parties have moved for entry of a proposed consent decree to resolve the issue in this action—whether and when EPA will act on Plaintiff's Petition. (R. Doc. 44). The proposed consent decree, if entered by the Court, will require EPA to respond to Plaintiff's Petition by September 1, 2016. (R. Doc. 44-2). YCI clearly is attempting to disrupt the settlement negotiated by the parties, as it is seeking a delay of EPA's response to Plaintiff's Petition until December 31, 2016 in light of an amended permit modification it submitted to the LDEQ in mid-June 2016 which, according to YCI, "will moot all issues raised by the Plaintiffs regarding the current permit." (R. Doc. 36 at 2).

Again, this litigation pertains solely to the "timeline and not the substance of EPA's decision" on Plaintiff's Petition. *See Sierra Club,* 308 F.R.D. at 13. EPA has had an opportunity to consider YCI's comments on the proposed consent decree, which notified EPA of the amended permit modification submitted to the LDEQ. (R. Doc. 36-1). As allowing YCI to intervene in this action "will unduly delay or prejudice the adjudication of the original parties' rights" to settle their dispute, the Court will deny YCI's request to intervene permissively under Rule 24(b). For similar reasons, the Court will deny YCI's request to participate in this action as *amicus curiae*.

**III. Conclusion**

For the foregoing reasons, the Court concludes that the YCI may not intervene in this matter under Rule 24(a) or Rule 24(b) of the Federal Rules of Civil Procedure. Furthermore, in light of the denial of YCI's motion to intervene and request to participate in this action as *amicus*

*curiae*, the Court will strike from the record YCI's "Notice of Supplemental Filing" (R. Doc. 36), which was filed by a non-party while this action was stayed.

**IT IS ORDERED** that Yuhuang Chemical, Inc.'s Motion to Intervene (R. Doc. 18) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Plaintiffs' Motion to Strike (R. Doc. 37) is **GRANTED**, and the Clerk's Office shall **STRIKE** Yuhuang Chemical, Inc.'s Notice of Supplemental Filing (R. Doc. 36) from the record.

Signed in Baton Rouge, Louisiana, on August 16, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**